## JACQUES VRANCX *vs.* MATTHIAS D. ROSS.

Under the St. of 1864, c. 120, a city agreed to pay a person one hundred and twenty-five dollars per man for each recruit procured by him to be mustered on its quota of volunteers in the military service. A recruit whom he procured, and upon whose muster he received from the city the stipulated sum, brought an action against him for the money as received to the plaintiff's use. *Held,* that the plaintiff had no title to the money sued for.

*It seems,* that the provision of art. 1325 of the Civil Code of Belgium, concerning written instruments under private signature which contain reciprocal stipulations, that each original should recite the number of originals which have been made, is directory only; and that, even were this not so, the further provision, that the omission of such recital cannot be set up by one who has executed on his part the stipulations of the instrument, is a bar to an action brought here, by a party to such an instrument made in Belgium, to impeach its validity on the ground of such omission, after the execution of its stipulations by the plaintiff.

An action for money had and received will not lie on the ground of the nullity of an instrument which sets forth the terms of a contract of which there is proof in the action independently of the instrument, to recover money of the plaintiff received by the defendant to his own use by virtue of the contract, upon an adequate consideration, and with the consent and by the order of the plaintiff.

CONTRACT for four hundred and fifty dollars alleged to have been received by the defendant to the plaintiff's use. Answer, that, if the defendant received any moneys of the plaintiff, they were received by virtue of a contract between the parties which authorized the defendant to retain them, and so were not received to the plaintiff's use.

A copy of a paper containing the terms of this contract, repeated in the English, French, German and Dutch languages, dated at Antwerp in Belgium in 1864, was annexed to the answer, and set forth that the undersigned, in consideration of a free passage to the United States from any port of Europe, including board and outfit, agreed, on arrival in the United States, to bind themselves to serve for a time not exceeding three years in any employment which the defendant might designate, not in contravention of the laws of the United States, for wages not less than were usual in the United States for similar services, nor less than twelve dollars per month, including board; " be it distinctly understood, however, not to include extra moneys given or paid as bounties to such persons who are entitled, and

which we may be entitled, to receive; such bounties or extra moneys which we may be entitled to, excepting one hundred dollars in the currency of the United States, we agree to assign and hereby do assign to the aforesaid Ross; and we further agree and bind ourselves to execute any and all papers which may be or become necessary to enable said Ross to procure any and all extra moneys or bounties which we may be entitled to, excepting the one hundred dollars above mentioned, on entering or engaging into any service or employment designated by said Ross, for the period of time aforenamed." And it further set forth that it had been clearly explained to the undersigned, and was fully understood by them, that there were extraordinary risks and expenses to be incurred in giving them a free passage to the United States and procuring remunerative employment for them on arrival, and that therefore they, of their own free will, made the assignment of bounties or extra moneys previously recited.

At the trial in the superior court, before *Putnam*, J., without a jury, an original of this paper, signed by the plaintiff at Antwerp was introduced in evidence; and it was proved that, under and by virtue of the contract therein set forth, the plaintiff came from Antwerp to Boston, and was here mustered into the military service of the United States, and that, in consequence of the muster, the defendant received the moneys sued for, $125 from the city of Boston and $325 from the Commonwealth.

It appeared that the money from the city was received pursuant to an agreement made between the city and the defendant on April 18, 1864, after the passage of the St. of 1864, *c.* 120, a written memorandum of which agreement was introduced in evidence, the material part thereof being as follows: " City to pay $125 per man for 2500 men upon receipt from competent mustering officers of the United States' army that the men are upon the quota of Boston. We agree that the city shall pay the $125 as above until we give notice to Mr. Ross to stop bringing men, or the number has reached 2500;" and it also appeared that the money from the Commonwealth was the bounty of the recruit, under the St. of 1863, *c.* 254, and was re-

ceived by the defendant "in pursuance of an order of the gov-
ernor and by virtue of tne contract."

The defendant contended that he had a right to hold the
money from the city, independent of his contract with the plain-
tiff, as being money to which the plaintiff never had, nor could
have, any title; and also, that, if this were not so, he had never-
theless a right to hold it by virtue of the contract; and it was
admitted by the plaintiff that the defendant had a right to retain
both sums, if the contract was valid.

In impeachment of its validity, the plaintiff introduced testi-
mony with the design of proving that it was procured by fraud
and misrepresentation. Testimony on the same question was
also introduced by the defendant. The judge found "that no
such fraud or misrepresentation was practised; but that the
plaintiff, having formerly been a soldier in Europe, entered into
the contract, fully understanding the nature and effect of it, and
that he was to come to this country for the purpose of entering
into the military service of the United States; that this purpose
was fully explained to him before he signed the contract, and no
deceit was practised on him; and that his enlistment, after he
arrived here, was voluntary."

The plaintiff then contended that the contract was invalid
because the instrument signed by the plaintiff was not expressed
in accordance with art. 1325 of the Civil Code of Belgium,
evidence whereof and of decisions of the courts of appeal and
cassation thereon were introduced. This article is as follows:
"1325. Les actes sous seing privé qui contiennent des con-
ventions synallagmatiques ne sont valables qu'autant qu'ils
ont été faits en autant d'originaux qu'il y a de parties ayant un
intérêt distinct. Il suffit d'un original pour toutes les personnes
ayant le même intérêt. Chaque original doit contenir la men-
tion du nombre des originaux qui ont été faits. Néanmoins le
défaut de mention que les originaux ont été faits doubles ne
peut être opposé par celui qui a executé de sa part la convention
porteé dans l'acte." * The insufficiency specified by the plain-

---

* "1325. Instruments under private signature which contain reciprocal
stipulations are valid only when made in as many originals as there are parties

tiff was as to that portion of the article which provides that such an instrument as the one in question should contain mention of the number of originals which have been made. On this point the judge found that it was made in duplicate or in triplicate, but that this did not appear by the instrument itself. He found also that the contract was to be executed in the United States; and ruled "that it should be governed by the laws of the United States, and was properly executed and valid under our laws;" and further ruled that, if this was not so, it was valid under the law of Belgium. And he found further "that independently of the papers there was a contract between the parties such as the papers express in writing."

On the whole case he ruled that the defendant was entitled to retain the moneys claimed by the plaintiff, and reported the case for revision by this court, with the agreement that the authorities which had been put in evidence before him concerning the law of Belgium might be here used in the argument.

*C. Cowley*, for the plaintiff.

*A. G. Browne, Jr., & H. D. Hyde*, for the defendant.

Hoar, J. The defendant has received, as the report finds, two sums of money on account of the plaintiff's enlistment in the service of the United States as one of the quota of Massachusetts and of the city of Boston. He received these sums not under any agreement to pay them to the plaintiff, or to hold them for his benefit, but as his own money, to which he was entitled by virtue of a contract with the plaintiff, fairly made, and without fraud or misrepresentation.

The plaintiff claims the money on the ground that the written contract by which the defendant became entitled to it was made in Belgium, and was not made with the formalities which the laws of Belgium require. But we are all of opinion that this claim cannot be supported, for several reasons.

having distinct interests. One original is sufficient for all parties having the same interest. Each original should contain mention of the number of originals which have been made. Nevertheless default of mention that the originals have been made in duplicate cannot be set up by him who has executed on his part the stipulations of the instrument."

In the first place, the money received from the city of Boston was never due or payable to the plaintiff, but was received by the defendant under a contract with the city, made by himself, by which he was to receive that sum for his agency in procuring the plaintiff's enlistment. It was not offered or promised as a bounty to the recruit. The plaintiff, therefore, had no title to it, and it was not received by the defendant to his use.

In the next place, we are inclined to think that the contract which the parties entered into in Belgium was not invalid for want of technical formalities, under the Belgian law. The defect alleged is, that the written contract did not mention that it was executed in duplicate. But the Civil Code, art. 1325, while it provides that contracts containing reciprocal stipulations shall be valid only when made in as many originals as there are parties having distinct interests, merely directs that each should state the number of originals which are made. And even the latter provision, which seems to be directory only, and not essential, is followed by a proviso that no objection to the want of mention of the number of originals can be taken by a party who has himself executed the stipulations of the instrument; which applies directly to the case of the plaintiff.

But further, if this view of the Belgian law, to which we have not thought it necessary to give a very careful study, were erroneous, there is another ground which is decisive of the case. If the written contract were ever so defective, so that it could not be enforced if it remained executory, and were to be regarded as a mere nullity, it still remains to be shown that the defendant has received money to the plaintiff's use; that is, money which, by an agreement, express or implied, he received on the plaintiff's account, or which he cannot justly retain, because in equity and good conscience it belongs to the plaintiff. But the superior court have found that the contract was made and assented to by the parties, independently of the writing; and it has been executed. The defendant has received the money in question, as his own, with the plaintiff's consent and by his order; to his own use, and not to the plaintiff's use; and this without fraud or misrepresentation, and upon an ade-

quate consideration which the plaintiff has received and retained. The law implies no promise, under these circumstances, to repay it. The defendant's whole expenditure has been made, and his risks incurred, upon the faith of the plaintiff's agreement that he should have this money as his compensation; and the money has been paid accordingly. Because the written formal contract is invalid would be no reason that an arrangement between the parties should be set aside which has been already carried into complete effect.

*Judgment for the defendant upon the report.*